**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shannon Lynn Wills,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-22-01792-PHX-JZB<br><br>**ORDER** |

Plaintiff challenges the denial of her applications for disability benefits under Titles II and XVI of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff exhausted administrative remedies and filed a Complaint seeking judicial review of the denial. (Doc. 1.) All parties have consented to the jurisdiction of a magistrate judge (doc. 19), and the Court exercises subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed Plaintiff's Opening Brief (Doc. 24, "Pl. Br."), Defendant's Answering Brief (Doc. 26, "Def. Br."), Plaintiff's Reply (Doc. 27, "Reply"), and the Administrative Record (Doc. 12, "AR."), the Court hereby reverses the Commissioner's unfavorable decision and remands for additional proceedings.

**I.    THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW**

The Administrative Law Judge ("ALJ") follows a five-step process in deciding applications for disability benefits. *E.g.*, 20 C.F.R. § 404.1520(a)(4).[1] Through the first

---
[1] Federal regulations governing Title II disability determinations are codified in 20 C.F.R. part 404, subpart P. Parallel regulations governing Title XVI determinations are codified

four of these steps, the claimant carries the burden of proof, but that burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the ALJ must decide whether the claimant has engaged in substantial, gainful work activity during the relevant period. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant has engaged in such work, she is not disabled. *Id*. If the claimant has not worked at substantial, gainful activity levels, the ALJ proceeds to the second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If the claimant has no severe impairment, the analysis concludes, and the claimant is found not disabled. *Id*. Otherwise, the analysis proceeds to step three, where the ALJ considers whether the claimant's impairments meet, or are medically equivalent to, an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 404.1520(a)(4)(iii). If the claimant suffers from a listing-level impairment, she is disabled. *Id.* Otherwise, the ALJ must determine the claimant's residual functional capacity ("RFC") and proceed to step four,[2] where the ALJ determines whether the claimant can perform her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant can perform this work, she is not disabled. *Id.* Otherwise, the analysis proceeds to step five—the final step—where the ALJ determines if the claimant can perform other work in the national economy based on her RFC, age, education, and work experience. *Id*. § 404.1520(a)(4)(v). If the claimant cannot perform other work, she is disabled. *Id*.

"The Social Security Administration's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance . . . It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). "[A]

---

in 20 C.F.R. part 416, subpart I. These regulations are substantively identical as applied here, so the Court will cite only to DIB regulations for simplicity and clarity.

[2] The "residual functional capacity is the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id*. (citations omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id*. (quotations and citations omitted).

## II. PROCEDURAL HISTORY

Plaintiff suffers from several impairments, including posttraumatic stress disorder ("PTSD"), bipolar disorder, depression, fibromyalgia, and degenerative disc disease of the lumbar spine. (AR. at 412.) She applied for disability benefits in August and September 2018. (*Id*. at 369-84.) Her applications were denied at the initial and reconsideration levels of administrative review, and she requested a hearing with an ALJ. (*Id*. at 227-35, 237-43, 245-46.) Plaintiff's hearing was held on August 5, 2021. (*Id*. at 41-94.) Plaintiff and vocational expert Erin Hunt testified at the hearing. The ALJ issued an unfavorable decision on September 27, 2021. (*Id*. at 14-40.) Plaintiff timely appealed, but the Social Security Appeals Council denied review in a letter dated August 26, 2022. (*Id*. at 2-7.) Plaintiff then filed this civil action. (Doc. 1.)

## III. THE ALJ DECISION

The ALJ concluded Plaintiff had not engaged in substantial, gainful work activity during the relevant period, and that she had medically-determinable, severe physical and mental health impairments, including bipolar disorder, posttraumatic stress disorder, personality disorder, fibromyalgia, and degenerative disc disease of the lumbar spine. (AR. at 20.) Proceeding to steps three and four, the ALJ concluded these impairments did not meet or medically equal a listing, and found that the claimant retained the ability to perform light work with various postural and environmental limitations and a sit-stand option every 30 to 60 minutes permitting the claimant to change positions for "3 to 5 minutes while continuing to work on her assigned task." (*Id*. at 24.) The ALJ concluded Plaintiff was further limited to performing "simple routine tasks" with no public contact, and only "occasional superficial contact with co-workers, with nothing involving team tasks." (*Id*. at 24.) In arriving at this conclusion, the ALJ discredited Plaintiff's symptom

testimony by concluding her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[,]" including evidence of her ability to engage in certain activities, evidence that her physical conditions were controlled with routine and conservative treatment, and evidence that her "engagement with psychotropic medication management waxes and wanes." (*Id*. at 25-27.) The ALJ also found several of claimant's treating providers' opinions to be unpersuasive. (*Id*. at 29-31.) The ALJ concluded that, while Plaintiff could not return to her past relevant work, she could perform work existing in significant numbers in the national economy, and that she was not disabled at step five. (*Id*. at 32-33.)

## IV. DISCUSSION

Plaintiff raises two broad issues: (1) whether the ALJ erred by discrediting Plaintiff's symptom testimony without citing specific, clear, and convincing reasons supported by substantial evidence; and (2) whether the ALJ erred by failing to provide an adequate explanation to discredit the opinions of Plaintiff's treating psychologist, counselor, and physical therapist. (Pl. Br. at 1.) The Court finds the ALJ erred by discrediting the opinion of Plaintiff's treating psychologist, and that this error was not harmless. The Court does not address the remaining issues. The Court remands for additional proceedings for the reasons explained below.

**A.   The ALJ erred by rejecting Dr. Hanley's assessment without providing an explanation supported by substantial evidence.**

**1. Legal Standard.**

Federal regulations provide that, for claims filed on or after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[3] The ALJ must, instead, determine the overall persuasiveness of a medical opinion by considering the regulatory

---

[3] As noted above, Plaintiff's current applications were filed in August and September 2018. (AR. at 369-84.)

factors, and must explain his consideration of the two "most important factors," supportability and consistency. *Id.* § 404.1520c(b)(2). The supportability factor encompasses "the objective medical evidence and supporting explanations presented by a medical source[ ]to support [the] medical opinion[] . . . ." *Id.* § 404.1520c(c)(1). The consistency factor encompasses the consistency of the medical opinion "with the evidence from other medical sources and nonmedical sources in the claim . . . ." *Id.* § 404.1520c(c)(2).

In *Woods v. Kijakazi*, the Ninth Circuit held these regulations abrogate the Circuit's longstanding test "requiring an ALJ to provide 'specific and legitimate'" reasons for discrediting the contradicted opinion of an examining or treating physician when the application for benefits is dated on or after March 27, 2017. 32 F.4th 785, 787, 789 (9th Cir. 2022). For claims filed on or after that date, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787. The Ninth Circuit further clarified:

> Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

*Id.* at 792.

**2. Dr. Hanley's Opinion and the ALJ's Decision.**

On July 30, 2021, Plaintiff's treating psychologist, Dr. Rosanna Hanley, completed a "Medical Assessment of the Patient's Ability to Perform Work Related Activity." (AR. at 1984-87.) Dr. Hanley concluded Plaintiff had "severe" limitations in a number of functional areas, including her ability to understand and remember detailed instructions, interact appropriately with the general public, accept instructions and respond to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavior extremes, travel to unfamiliar places or use public

transportation, set realistic goals or make plans independently of others, maintain attention and concentration without interruptions from symptoms, perform activities within a schedule, maintain regular attendance, and sustain an ordinary routine without supervision. (*Id*. at 1984-86.)[4] Dr. Hanley concluded Plaintiff had "mild," "moderate," and "moderately severe" limitations in other functional areas. (*Id*. at 1984-86.)

In the decision, the ALJ concluded Dr. Hanley's assessment was unpersuasive. (AR. at 31.) The ALJ explained that the assessment was "largely in checkbox format and [Dr. Hanley] does not provide any support for her findings"; and that her "contemporaneous treatment notes also do not support this degree of limitation" as those records "largely focus on claimant's relationship with her mother and other situational stressors, and other than varied mood, they generally document normal observations." (*Id*.) The ALJ concluded the opinion of the non-examining consultant was more persuasive. (*Id*.)

### 3. Analysis.

The ALJ's explanation addresses the appropriate regulatory factors but is not supported by substantial evidence. *Woods*, 32 F.4th at 792; *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.") (quotations and citations omitted). First, while Dr. Hanley checked boxes denoting the severity of Plaintiff's limitations, she also included handwritten remarks listing Plaintiff's diagnoses, symptoms, and treatment history. (AR. at 1984-86.) Dr. Hanley explained, for instance, that her conclusions were supported by her own "direct observation" over a two-and-a-half-year treatment period. (*Id*.) Indeed, the record includes nearly 300 pages of evidence from Dr. Hanley's practice (*id*. at 822-62, 1063-86, 1706-1924), and these records establish that Dr. Hanley treated Plaintiff as early as December 2018. (*Id*. at 1079.) Dr. Hanley's records further illustrate that while Plaintiff's

---

[4] The assessment includes the following definition of a "severe" limitation: "impairment precludes ability to perform work-related functions 21% or more of an 8-hour workday." (AR. at 1984.)

condition was, at times, exacerbated by the "situational stressors" the ALJ cited, Dr. Hanley's treatment of Plaintiff predominately addressed Plaintiff's symptoms of PTSD, depression, and anxiety related to a prior abusive relationship, which are detailed in the record. (*Id.* at 1711, 1716, 1719, 1727.)

The Court also finds that substantial evidence does not support the conclusion that Dr. Hanley documented "generally[ ] normal observations," aside from Plaintiff's varied mood. Dr. Hanley and others from the Family Services Agency documented Plaintiff's recurring and fluctuating mental health symptoms throughout the relevant period. (AR. at 823 (from July 2017, exhibits sad mood, flat affect, negative stream of thought, poor insight, and negative thought content after being denied disability benefits); 827 (from September 2017, reporting anxiety changes daily, insomnia, flashbacks, paranoia, concentration difficulties and passive suicidal thoughts); 844 (from November 2017, exhibits a depressed mood with congruent affect and limited insight); 846 (also from November 2017, reports a more stable mood and improvement with less depression and anxiety); 849 (from January 2018 making progress with anxiety); 853-54 (from July 2018, stuck in a negative hole, exhibits depressed and anxious mood, status worsened); 1064 (from September 2018, continues to be unable to work due to medical issues, doing better with trauma but occasional flashbacks); 1075 (from January 2019, dirty appearance, dysphoric mood, unchanged status); 1707 (also from January 2019, Plaintiff arrived in a panic attack, constantly anxious and hypervigilant); 1711 (from February 2019, presented in tears and shaking, has good coping skills but PTSD still interferes with functioning); 1716 (lives in constant fear, constant hypervigilance); 1719-22 (from April 2019, experiencing PTSD symptoms related to past abuse, demonstrates blunted affect, dysphoric mood, delusional and fearful thought content, hallucinations); 1734 (from June 2019, no psychiatric complaints, feels good); 1744 (from July 2019, patient in down cycle); 1773 (from August 2019, continues to have crises related to past abuse, medications help control symptoms unless triggered, several chronic, progressive medical issues); 1785 (from September 2019, reports up days, down days, and some fine days);

1795 (from November 2019, demonstrates "impressive coping skills"); 1803 (from December 2019, stable and doing well considering home stresses); 1805-06 (also from December 2019, status worsened, increased worry, anxiety); 1813 (from January 2020, appears stable and coping well); 1815 (from February 2020, no new psychiatric complaints); 1819 (from March 2020, doing ok but still gets anxiety in public); 1831-33 (from April 2020, no psychiatric complaints); 1835 (from May 2020, reports no psychiatric symptoms and reports she is stable); 1839 (from June 2020, reports good days and bad, mostly related to PTSD); 1841-42 (also from June 2020, functional with daily activities but reports high anxiety in in public areas, exhibits depressed, anxious moods and depressive thought content); 1847 (from July 2020, reports medications are working and she is taking them as prescribed); 1848 (also from July 2020, reports vivid nightmares of past trauma); 1857 (from August 2020, angry with pressured speech but able to deescalate); 1863 (from September 2020, appearing in a positive direction as it relates to her health), 1877 (from December 2020, reports no psychiatric complaints, coping well, health at baseline); 1881 (from January 2021, reports hypervigilance, fear she will be murdered); 1883-84 (also from January 2021, feeling depressed, anxious, easily annoyed, paranoid, distracted, exhibits poor concentration); 1889 (reports she is at baseline with no new psychiatric complaints); 1906-07 (from April 2021, exhibits depressed, paranoid, anxious mood, poor concentration);  1912 (also from April 2021, no psychiatric complaints and reports at baseline); 1914 (from May 2021, reports visual distortions, inability to focus, more confusion, more scattered than usual).[5] These records illustrate far more than a "varied mood" exacerbated by situational stressors. The Court finds the ALJ did not cite reasons supported by substantial evidence for finding Dr. Hanley's assessment unpersuasive.

**4. Harmless Error.**

---

[5] *See Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014) (in the mental health context, noting that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

The Court also finds the ALJ's error was not harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*superseded on other grounds by* 20 C.F.R. § 404.1502(a)) ("Although we have expressed different formulations of the harmless error rule depending on the facts of the case and the error at issue, we have adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'"); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008). Dr. Hanley opined Plaintiff had several severe limitations and would likely miss more than three days of work per month. (AR. at 1984-87.) At the hearing, the vocational expert testified that a hypothetical individual could not sustain competitive work with that many monthly absences. (AR. at 92.) If credited, that assessment would direct a finding Plaintiff is disabled. As such, the improper rejection of that opinion is not inconsequential to the disability determination.

**B.     Remedy.**

When the Court finds harmful legal error it "ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). This is "the proper course, except in rare circumstances . . . ." *Treichler*, 775 F.3d at 1099 (quotations omitted). To remand for payment of benefits, the Court must find "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted). Even if all three prongs are satisfied, however, remand for additional proceedings may still be appropriate where "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id*. at 1021.

The Court concludes the evidence casts doubt on Plaintiff's functionality sufficient to warrant additional proceedings. Plaintiff's ability to engage on some level socially

undermines her testimony that she is paranoid and irritable around others, socially avoidant, and largely homebound. While not reaching the issue of whether the ALJ has provided sufficiently clear and convincing reasons supported by substantial evidence for discrediting Plaintiff's symptom testimony, the Court notes that documented activities such as attending a concert performance, travelling to California to visit friends, and attending a group meeting, raise questions as to the extent of Plaintiff's anxiety and extreme paranoia. (AR. at 78-79) ("Q: You talked about having problems with being out in public. You also talked about taking the dog for a walk. So can you tell me a little bit about where and how your difficulties with being out in public turn up? A: I get extremely paranoid. Part of my PTSD issue is with someone who tried to harm me, so I'm afraid to go anywhere where this person might show up. There have been a few instances where I think I saw this person, so I don't want to go anywhere because I don't want to run into them. They're a threat. When I do take my dogs out with my two sons, we go down to the park. It's about nine houses down. We'll circle around. I'll sit and then we walk back. So it's not long. It's not far from home. It's, you know, in the same little area, but just I'm super paranoid to be around groups of people, lots of people. Is this person hiding in the crowd? Are they looking for me? I'm afraid to leave a lot."); (*id.* at 82) ("[Q:] With the mental health conditions that you have, does it ever cause things like irritability or other ways that make it hard socially other than just being around people you don't know? A: It causes paranoia. It makes me very avoidant. I don't want to go anywhere. I don't want to do anything. I don't want to see other people."); (*id.* at 84) ("[Q:] Are there other things that might trigger that response? A: Being around anyone in general that I don't know and just outside of my safe zone. My safe zone is my bedroom with my dogs, and if I'm put into any kind of position where there might be people coming and going, I get paranoid."). The Court also notes that, while mental health symptoms may wax and wane over time, Plaintiff reported no psychiatric complaints on a number of occasions. (AR. at 1734, 1815, 1832, 1835, 1877, 1912.)

Additional proceedings would also serve useful purposes, such as the opportunity

to obtain additional statements from Dr. Hanley, or to obtain other treating source evidence of Plaintiff's functionality sufficient to alleviate these concerns.

In conclusion, the record as a whole—particularly the evidence of social activities and the lack of psychiatric complaints cited above—creates serious doubt that Plaintiff is disabled, and additional proceedings would serve a useful purpose. *Leon*, 880 F.3d at 1047 ("Remand is also useful here because 'the presentation of further evidence . . . may well prove enlightening in light of the passage of time,' . . . .") (quotation and citations omitted).

**IT IS ORDERED** that the September 27, 2021, decision of the ALJ is reversed and remanded for additional proceedings.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and terminate this action.

Dated this 29th day of March, 2024.

Honorable John Z. Boyle
United States Magistrate Judge